First case this morning is Intamin v. Magnetar. Mr. Ward. Thank you. Good morning and may it please the court. To win on this appeal Intamin must prove one thing, demonstrate one thing to this court. And that's that the district court erred when it interpreted the claim one element related to an intermediary. And the court, district court did so err in at least one of two ways. What's an intermediary and why is it necessary in this claim? In this claim, your honor, the intermediary serves the purpose to provide spacing and support for the magnets of the magnet elements which are the magnets with alternating polarities. For physics reasons there has to be spacing between those two magnets of alternating polarities and also these magnets are so strong that if there's not something in between those two magnets they tend to spin into a new location. Okay. The significance of a Halbach array is that it creates a one-sided flux. And in the Halbach array all of the magnets are participating in creating that one-sided flux. Given that, can any of the magnets in the Halbach array be considered intermediaries? They're all participating as magnetic elements to create a one-sided flux. How do you therefore, as you must, say that some of the magnets are nonetheless intermediaries? Because the claim language tells us that they are, your honor. The claim language provides that the magnet elements are those elements that are part of the plurality of magnets along the carrying rail of alternating polarity. Those are the only magnet elements that we're looking at for magnet elements. So, in a Halbach array where the elements that are, the magnets that are in between those alternating polarity magnets are parallel to the carrying rail as opposed to perpendicular, they are not of alternating polarity. And because they are not alternating polarity, they are not magnet elements as defined by Claim 1, the specific language of Claim 1. What's the significance of the disclosure in the patent that says the flux must run crosswise? Wouldn't that mean that the magnets having their north and south pole pointing across the air gap would be considered magnetic elements? The magnet elements that are of opposite polarity along both carrying rails are those magnet elements. And we agree, your honor, that it's the flux that is created across that air gap that provides the main breaking force in these rides. There's nothing in evidence or factually submitted to the district court. But in the Halbach array, those magnets with the polarity running parallel with the track itself are nonetheless participating in that crosswise creation of an eddy current. That is a factual contention by Magnetar that is in dispute. That's just realities of how a Halbach array works. I mean, you can get that off, excuse me, Wikipedia. That is true, your honor. But even though it's participating, they're not providing the main breaking force. And there's nothing in the Claim language, Claim 1 language, or in the specifications that would exclude a magnet as being an intermediary, no matter what the arrangement of that magnet is. The Claim language says, look to the magnetic array. Find those magnets that have opposite polarity, one pointing with the north pole pointing up, the next with the south pole pointing up, and so on. And the things in between those, look in between those two magnets. But you argue, excuse me for interrupting, you agreed with the district court that the the magnetic elements. And then you also argue that that something between the magnetic elements does not participate in the flux. Now, doesn't that seem to matter? We did not argue, your honor, with all due respect, that it does not participate in the flux. What we argued was that those alternating polarity magnets create the main breaking force. That was the phrase that we used. We're not saying that whatever the intermediary is cannot participate in providing the flux. That's nowhere in the Claim language. It's nowhere in the specifications, your honor. So those were not specifically excluded either by argument or by the Claim language or the intrinsic evidence here. Instead, your honor, the Patent language tells us to look for those alternating polarity magnets. And there's no dispute that alternating means opposite. There's only two poles in a magnet, one north and one south. And along those carrying rails, those magnets that we're told to look for, look between in order to find the intermediary, are those adjacent pairs on the same rail, one with a north facing up and the next with the south facing up. So it's your theory that these alternating magnets remain adjacent even though there's another magnet between them. Is that how you read it? Yes, your honor. And it's because the specific language is alternating pairs of said plurality of magnet elements. And magnet elements does not include all magnets, but instead it's defined in the prior Claim element to be only those magnets of alternating polarity. And the term adjacent is meant to tell you to look along the same carrying rail. Because by its own Claim language, we're saying there's an intermediary in between those alternating polarity magnets, so they cannot necessarily abut. They cannot be next to each other. Let me ask you about the flux. You mentioned the flux before. Even assuming we were to accept your view of intermediaries allowing them to be magnets, you're not saying the case is over then on the infringement, right? Is there something left? Wouldn't we have to remand it to the district court for them to determine whether or not there's infringement in the accused devices? In other words, whether the magnetic elements create the necessary flux? Well, your honor, first of all, you would not necessarily have to remand for that purpose because it's undisputed what the Hall-Back Array looks like that's used in the Magnetar breaks. And that shows that those intervening or intermediary magnets are of lateral or their polarities are parallel to the carrying rail. And if the court finds that there's nothing in the claim language or specifications that requires or limits the intermediary from participating in a flux in any way, then you don't have to remand for the purpose of determining whether there's an infringement issue still. Instead, you could remand with the direction that there's a, To reverse the judgment of literal infringement, summary judgment of literal infringement on this particular claim. Now on that point of whether or not the intermediaries can contribute to the flux, nobody's ever, I mean, the district court didn't reach that issue on claim construction. You're asking us to decide for the first time, construe the claim so that they can contribute to the flux, correct? I agree, your honor, that the district court was not asked to determine if, as part of the claim construction, the contribution to the flux of an intermediary is important or not. The other basis, in addition to the fact that the district court did not look to determine what the magnet elements were, which magnets were supposed to look at. The district court also appears to have, although it states that it did not, Bring a limitation from the specifications, read that into the claim one language. And that limitation was that that intermediary is non-magnetic. In response, Intamin argued to the district court that the intermediary can be magnetic. And the district court, in response and in rejecting that argument, stated and quoted the portion of the specification that described a figure showing a non-magnetic intermediary. And based upon that, denied Intamin's interpretation that the intervening intermediary can be magnetic. Now if you look at the claim one and claim two languages, it's clear that the inventors did not intend to limit the intermediary in claim one to non-magnetic intermediaries. There's no such limitation in the claim language, it just says an intermediary. And more specifically, in claim two, is a dependent claim with only one additional limitation. And that additional limitation is only that that intermediary is non-magnetic. I spend a lot of time in the scholarship of patent law, and we all scoff at the reverse doctrine of equivalence. Is this the one case in a million where the reverse doctrine of equivalence applies? Where indeed, we do have a magnetic intermediary that fits within the language of the claim. But the accused device operates in such a different way that it is not infringing. Your Honor, I would say- By the Hallbrock away, creating a one-sided flux, and the polarities that are parallel to the track. Participating in the creation of that eddy current in a way that was not anticipated by the claim. This is not the one in the million case, Your Honor. Why? It's not the one in the million case because that the claim language anticipates and provides for a magnetic or an intermediary that may be magnetic, including a magnet. Now, Magnitar argues in his brief that although claim one would cover a magnetic intermediary, that would be steel or another metal that may be magnetic. There's nothing in the claim language or specification that would slice out. That pours carve out an exception of what is magnetic and what is not magnetic for the purposes of this claim. Further, Your Honor, when you refer to a one-sided flux, the flux has to go across that air gap in order to provide a breaking force. And that's what this patent is about. Having that flux go across that air gap and slow down the roller coaster ride, slow down the dropping tower ride. So it operates in the exact same way, Your Honor. It may provide additional direction or additional complements to the breaking according to Magnitar, but, Your Honor, it does provide flux across the gap, and that's the most important flux. What was this patent a translation from? Do you know? Translated from a German patent. Okay. It reads like it. The other point that we raise in the appeal, Your Honor, is not necessary for intimate to prevail on appeal, but because we argue regarding the length limitation in claim one. The district court has already found that it denies summary judgment for infringement under the doctrine of equivalence related to the length limitation. So that has not been appealed, that has not been cross appealed. The length that we're arguing about in our brief relates to the district court's judgment of literal non-infringement. And in applying that portion, its interpretation or its construction of the length limitation, it misinterpreted conductive rail for conducting part. And we would argue that that needs to go back to the district court to determine if, to reevaluate based on the proper claim language, whether or not there's literal non-infringement. Well, as I read the patent, or at least as I try to understand it, the conductive part is that part of the conductive rail that has the conductive covering. The conducting part is, that's correct. The conductive rail is the longer part. So it's all one unit, except part of the conductive rail, conducting rail, is- Includes the coding, that's correct. Includes the coding. That's correct. Now, we don't have in the record, at least I couldn't find it, a full description of the accused device. So I'm puzzled about this length problem. That is, in the context of a roller coaster, is it your perception of this whole device that the rail will go, the conductive rail will go the whole length of the roller coaster railing? Or is it just a piece at the end where the car comes into the rest stop? How does that work? It works in this way, in a roller coaster implementation. The magnets are actually on the track within 100 or 200 yards of the station. The rail, the conductive rail, is on the passenger car. So it cannot extend the length of the roller coaster ride. It only extends the length of the passenger car at most. It may be shorter than the length of the passenger car. Which is why, your honor, we disagree with the district court's interpretation that length means it has to travel from end to end of any ride, whether it be a tower ride or roller coaster ride. And I see I'm about to run out of time, but I'd like to reserve a little time I have left for the rebuttal. Thank you. Thank you, Mr. Good, you get to ask your question. Mr. Ward, we'll restore three minutes of your rebuttal time. And would you give Mr. Senga, thank you very much. An extra three minutes should he need to use it. Good morning, your honors. The intermediary claim limitation, we think, was correctly interpreted by the district court and the district court's interpretation did not turn on whether the intermediary was magnetic or not. It simply ruled that the intermediary is a member disposed between others. And in making that interpretation, it properly- If that's the case, if the intermediary is just in this claim, something disposed between the magnets of opposite polarity, then even if that thing which is between the magnets of opposing polarity happens to be another magnet that is participating in the flux, doesn't it still fall within the scope of the claim? Well, your honor, I would say no. The reason being is that the claim language says that the adjacent pairs in between which the intermediary is disposed, those are adjacent pairs of magnets of alternating polarity. The claim, in some instances, refers to opposite polarity when it refers to the magnets across the gap, one rail to another rail. But within the same rail, the plurality of magnets is described as magnet elements mounted on each of said carrying rails with alternating polarities. Now, that is a broader term than opposite polarities. As we know from the Hallback array design, the polarity of the magnets does not have to change to be 180 degrees opposite. The polarity of the magnet can change incrementally by 45 degrees or 90 degrees. Are you saying that this middle magnet is an alternating magnet? Is that what your argument is? Correct, your honor. The one that's pointing up instead of pointing sideways. Well, we have one magnet pointing up directly adjacent to it is a magnet pointing sideways. That is an alternating polarity, and we have nothing in between them. And the record is clear that those magnets are abutting one another directly. But all of this is based, is it not, then, on your assumption that alternating and opposite are not equivalent? That alternating does not mean opposite, right? Alternating does not mean opposite, and it's more than- I may have misread the briefs, but I thought the other side, at least, was even citing testimony by one of your witnesses that said that alternating and opposite are the same thing. So whether I'm right or not about that, is there anything in the record to establish that? Yes, your honor, two things. First off, we've got the claim itself, where it uses the different terms in different contexts. It uses opposite polarity to refer to the magnets across the rail versus alternating polarities to refer to the magnets within the rail, number one. Number two, in the specification where it describes the intermediary, it again uses terms, uses different terms. It says that the polarity can be reversed. Where, can you- I'm referring to the specification here at column four, line 22. Okay. It says the polarity of the magnet elements are reversed along the direction of the carrying rail. That would be analogous to opposite and reversed, meaning 180 degrees apart. And it goes on, and it says that the magnets always have a different polarity. Different meaning something different, but not necessarily 180 degrees apart. And so the specification uses different terms. Likewise, in the claim itself, it uses different terms, and the presumption is that the different terms have different meaning. With respect to your honor's question- Why would the drafter, admittedly there's an interpretation problem, perhaps even a problem of converting this patent from German to English. Why would they want to use two different terms, meaning two different things, to describe the same features? That's what I'm puzzled about. Well, the only answer I could give is that, presumably, the alternating term is broader. They, where possible, they wanted to get whatever breadth that they could. And that if there were some, again, some change in polarity, but not 180 degree change, that they wanted to cover that. But, you know, we are left with the record here that they established. And from the record, we see that they use different terms, and it appears that they intended to have different meanings. And certainly, if they wanted to cover something broader, they would get the benefit of that record. Now- So if we were to disagree with you on that point, is that the end of the story for you? Well, no. Let's assume we disagree, and we think alternating means opposite. What's left of your theory on the claim language on intermediaries? On intermediary? Well, we certainly could have a reverse Doctrine of Equivalence argument that I could address. But on the basic concept of whether, you know, something, whether there is an intermediary, you could presumably determine that the magnet could be the intermediary. I will note, however, there's no disclosure in the specification of an intermediary that is anything other than non-magnetic. The one and only disclosure of intermediary. Why isn't the claim differentiation itself a disclosure? You've got magnetic claimed as a dependent claim. Why doesn't that claim differentiation argument itself disclose a broader meaning for intermediary? That includes magnetic as well as non-magnetic elements. Two reasons, Your Honor. Number one, that dependent claim was added during prosecution. It was not part of the original disclosure upon filing, so it would be new matter. And secondly, we have a question as to whether claim differentiation is more than just a guideline in the course of the claim construction process, or whether it is necessarily- I have said in Phillips that the one place where it may have application is in the instance of a dependent claim, enlightening the breadth of the independent. Well, and here it certainly, you know, I'm not saying it should not be considered. All I'm saying is that I don't think it rises to the level of creating disclosure in the specification, since it was something added during the prosecution. Doesn't figure six, by the way, show the lack of an intermediary? That is an embodiment in which it appears that the magnets are directly in contact with one another, and all the more reason why when they claimed an intermediary affirmatively that the public should be entitled to rely on that narrow scope of the claim, particularly in view of the file history here, where the original claim submitted was merely three lines long. Well, but if that's an embodiment, we need to construe the claim to cover that embodiment, right? Well, Your Honor, I don't think that we have to construe the claim to cover every single embodiment that's disclosed. Clearly, the preferred embodiment is one in which there is some type of non-magnetic intermediary. That's what the bulk of the disclosure is about. But of course, a patent owner would love to have the broadest claim that covers every conceivable embodiment. But here, we've got the patent owner drafting the claims to the specific preferred. Isn't your device just an improvement? Well, we do think it is better, Your Honor, but I don't think it's an improvement. I do think it is a change in kind because it has done something that, in fact, the patent owner didn't really contemplate initially. Mr. Ward said in his argument that the whole purpose of the intermediary was to deal with the issue of the magnets spinning relative to one another. What Magnetart did, it was instead of using an intermediary to solve that problem, it encased the magnets in a tube. And the tube provided the resistance to the spinning of the magnets. So it really addresses the problem differently, not only in the way the flux is created, but also in the way the issue of the spinning of the magnets relative to each other. If any one limitation is missing, then there's no infringement, obviously. Talk a little bit about this length issue, which we just got to at the end of your opponent's discussion. I'm interested in how, I can't quite figure out how the length issue works in the context of a roller coaster. Roller coaster, okay. What happened in the roller coaster embodiment, and this is described in Mr. Conductive part and rail are attached to the car that the passengers sit in. It is, in the UQ's device, about three feet long for each car. The ride itself is approximately 1,000 feet long. The magnets, the array of magnets are fixed. They're mounted on the ride itself, on the stationary part of the ride. As the car moves past the area where you want to stop the car, the fin on the car passes through the magnets. In our scenario- Is this fin energized? Well, no. The fin is just a piece of metal. It has a metal coating. It is what's referred to as the conducting part or conducting rail. The coating, the conductive coating is coextensive with the entire rail. So- But it is not independently energized. The magnets are energized. Correct, the magnets provide the energy in that scenario. And so there was no debate at the district court level that the conducting rail in the accused products was substantially shorter than the end to end length of the ride. And the real issue was a pure legal claim construction issue over what does length mean. And the district court properly construed length to mean the distance, not the direction the position intimate has is that length means lengthwise, parallel to the rails as opposed to turn sideways. And we pointed out in our briefs how in every instance where the term length is used in the specification and even in other claims, it's used to refer to the distance of the whatever it happens to be that's being described, not the orientation or direction. And orientation or direction is referred to, there's a specific mention of that. So we think the plain meaning was properly construed by the district court. And we've also raised as an alternate ground for affirmance the doctrine of equivalence issue on this extend the length limitation. We do think it's properly raised on appeal. There was an issue in the intimate reply brief as to whether we properly appealed it. Well, we timely appealed from the only appealable order in this case. And this is an appropriate basis to support a finding of no infringement. And here there was an amendment for purposes of patentability. Festo applies, and there's been no argument by intimate at any stage that any of the festo exceptions apply. So there's a complete bar to estoppel. Is the conduct, just as a technicality, is the, they talk about the conducting fin in the accused device. Is the conducting fin on the accused device the same thing as the conducting part that we're talking about? Right, the fin, yeah, the fin is the same thing as the conducting part. The entire fin is coated with conductive material. What's confusing is the term conducting. It actually doesn't conduct anything, does it? It's just an inert piece of metal, isn't that right, with a coating? It is inert, your honor. However, when passing through the flux field generated by the magnets, it is the thing that creates the breaking force. So it's kind of a chicken and egg issue there. Can I go back to just one question on the magnetic intermediary issue? Sure. If we get past the point where magnets can be intermediaries, and we've sort of skipped that. We got into a little discussion with the other side about then the question of infringement. If we were to change the claim construction. And do you agree, the other side said that it's not required that just the magnetic elements create the necessary flux. Because the intermediaries can also contribute to that. And as I understood the other side, I thought that was clear. Is there any dispute on that? This is what we said- Well, yeah, I think there is. Infringement analysis, whether or not in the accused device. One, I would have thought that in the accused device in order to establish infringement you have to establish that the magnetic elements create the necessary flux. And the other side said, no, no, no, no, no, it's clear that the intermediaries can contribute to the flux. Maybe I misunderstood, but you heard the- No, I think that's the issue. I think to some extent the district court did in rejecting this main breaking force argument. The district court did get to that. It said, look, the issue on the intermediary is not whether it provides less breaking force than the other magnets. There's no disclosure in the patent whatsoever of the intermediary providing the breaking force. So our view is that we would have to really take a much closer look at the whole operation of the device if we were to have a different construction there. But the extent of the length issue certainly gives an alternate ground for affirmance. One question, Judge Prost, that you asked regarding Mr. Probonik's testimony on alternating and opposite. I did want to address that. He testified that the magnets on the other rail from the two carrying rails. The magnets from the other rail in the accused device are not opposite polarity. And frankly, he referred to alternating and opposite. But when he was giving his answer explaining exactly what was done in the accused device, and he said, no, we don't have alternating, we don't have opposite. He was talking about the magnets on the other rail, not the issue that's before this court, which is within a given rail, is there adjacent magnets of alternating polarity. I'd like to touch on the Rule 11 issue briefly. The district court initially had awarded sanctions. And the basis for that was that there was not a reasonable pre-filing inquiry. The reason being is that the pre-filing investigation revealed no information about the orientation of the magnets in the accused device. And even under Intimates Claim Construction, knowing that orientation of the magnets is critical to them. And we have an unusual situation where the plaintiff actually admitted that from the photographs that they took, they couldn't determine what the orientation of the magnets were. And what ultimately happened in the district court reconsidering is it weighted the quantity of efforts that the plaintiff put in to the pre-filing investigation and looked at the quantity versus the quality. And under the Rule 11 standard, it's an objectively reasonable standard. And from that point of view, there just was no evidence about the orientation of the magnets from which the plaintiff could have made a reasonable conclusion that there was infringement. And the standard in the reconsideration order, which looked at the totality of the plaintiff's efforts, was the wrong legal standard. And the district court misapplied the Antonius decision. And what's unusual here is that we know because the only difference between the original decision and the decision on reconsideration was the court applying a different legal standard. There was no additional factual evidence of the plaintiff's investigation presented. So we know that that legal standard in this case was dispositive of the sanctions issue. And this court should clarify that the standard is not just one of grading on the amount of time that was spent or the amount of effort that was spent. If there are claim limitations that the pre-filing investigation does not reveal, that can't be an objectively reasonable investigation. And the decisions in Vue and Juden support that. It's very analogous here. What happened was the product was observed from a distance. And from a distance, the particular magnetic orientation couldn't be discerned. The plaintiff admits as much. And as a result, we believe sanctions are appropriate. Thank you, Mr. Skanga. Thank you. Mr. Ward, you have three minutes remaining. Thank you, Your Honor. Going to the alternating polarity argument, and Your Honor, to address your point about Mr. Pribonik's testimony, I will read it to you from page JA1370. The question posed to Mr. Pribonik was, so as you understand it, the term alternating polarities means exact opposite polarities. And now we're talking about as used in the 350 patent. And he says, yes. It wasn't about reverse polarities. It wasn't about different polarities. He was asked, what does alternating polarities mean? And because, as he admitted, there are only two polarities, a north polarity and a south polarity in a magnet, alternating polarities means opposite. And that's how it's used in the 350 patent. That's what he admitted to in his deposition. And that is what is justified by the intrinsic evidence as well throughout the specifications and the claim language. Can I just ask you quickly on the length of the fixed device part? Yes. If we were to accept the court's claim construction, which you challenge, is it still your view that there's some genuine issue of fact with respect to literal infringement on the accused devices? Again, we accept the district court's claim construction that the rail has to run along the track. If you accept the district court's opinion that the claim construction, that the rail must run from the very beginning to the very end of the track, then on the literal infringement, no, there's no reason to go back to the district court, Your Honor, because the accused product does not run from end to end. However, as we previously discussed, there are other disclosed embodiments of this particular invention, the embodiment, for example, for a railroad car, a roller coaster ride, where the rail is attached to the car and is much shorter. So it necessarily cannot extend end to end of the track. Your Honor, as far as the doctrine of equivalence argument that is now being raised by Magnetar, it is not, if you look in the red brief, in their cross-appeal. The only issue raised in the cross-appeal in the red brief is the Rule 11 sanctions issue. And it is not an alternative grounds for granting for this appeal, because what we are challenging, Intamin, is the grant of summary judgment for literal infringement on the length term. We have not challenged the district court's denial of summary judgment for infringement under the doctrine of equivalence. That would be separate. If you reversed that, you would be modifying and amending the judgment, not just affirming the present judgment of the district court. Therefore, it was required to be something that had to be cross-appealed. It wasn't and necessarily cannot be relied upon by Magnetar here. Likewise, Magnetar never raised before the district court the argument of what do the opposite or opposing magnets look like. That was never a factual issue or basis for infringement at the district court level. Thank you, Your Honor. Thank you, Mr. Ward. I think all time's expired. So we thank counsel on both sides. The next case is Snyder versus OPM.